**The PEOPLE of the State of Colorado, Complainant,**

v.

**David D. BELINA, Attorney–Respondent.**

**No. 88SA74.**

Supreme Court of Colorado, En Banc.

Dec. 12, 1988.

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

Michael D. Gross, Colorado Springs, for attorney-respondent.

ROVIRA, Justice.

In this attorney discipline case, a hearing panel of the Supreme Court Grievance Committee has recommended that the respondent, David D. Belina, be suspended from the practice of law for a period of one year and one day, and that the cost of these proceedings be assessed against him. We accept the recommendations of the panel.

I.

The respondent was admitted to practice in Colorado in 1972, and is subject to the jurisdiction of this court and its Grievance Committee.

In Case No. GC 86B–46, the respondent was charged by complaint with having neglected a legal matter he undertook for M.A. Huneycutt and his daughter, Kristin Bloom. He was also charged with a conflict of interest arising from his representation of Glendella Webster. In Case No. GC 87B–42, the complaint alleged that the respondent neglected a legal matter and failed to comply with certain court orders. The cases were consolidated and set for hearing on June 9, 1987.

At the commencement of the hearing, the respondent, his attorney, and the deputy disciplinary counsel submitted a stipulation of facts in which the respondent freely and knowingly admitted that his conduct violated C.R.C.P. 241.6, and several sections of the Code of Professional Responsibility. The stipulated facts giving rise to this proceeding encompass three separate acts of misconduct.

A.

In August 1984, the respondent was retained by M.A. Huneycutt to represent him and his daughter, Kristin Bloom, in a case in which they were named defendants. Huneycutt paid the respondent $500 to file an answer for his daughter, and to either file a bankruptcy petition or an answer on his behalf. Respondent advised Huneycutt that he would prepare a bankruptcy petition for him which would stay the proceedings and he would also file an answer on his behalf if he could not complete the bankruptcy petition on time.

The respondent failed to file an answer for either Huneycutt or his daughter. In September 1984, a default was entered and in October 1984, a judgment was entered against Huneycutt and Bloom for $9,616.86 actual damages, $50,000 for mental suffering, and $100,000 for exemplary damages.

In November 1984, Huneycutt signed the bankruptcy petition prepared by respondent and it was filed on November 19, 1984. Respondent failed to file schedules with the petition. Therefore, no stay of the civil proceedings was ordered. It was not until May 1985 that respondent filed the appropriate schedules.

On January 24, 1985, Huneycutt's bank account was garnished. Until that time he was not aware that respondent had failed to file an answer on his or his daughter's behalf, that a bankruptcy stay had not been issued, and that a judgment had been entered in the civil action. Not being able to contact the respondent, Huneycutt retained other counsel. In subsequent proceedings the default judgment was set aside, but Huneycutt was ordered to pay $850 in costs to the plaintiffs.

## B.

On October 1, 1982, Glendella and Mark Webster entered into an agreement to sell their corporation, High Country Motors, Inc., to Richard E. Schoenfeld and Hubert E. Blazina. Respondent represented the Websters and prepared the sales agreement which required the buyers to pay $124,938.91, payable in part by a promissory note for $110,000 secured by a deed of trust on real property owned by each buyer. The note provided for monthly payments of $1,515.25 for ten years, commencing on November 1, 1982. The payments were made for ten months. On September 18, 1983, Mr. Webster died and the buyers stopped making payments.

In 1983, respondent began representing Schoenfeld, Blazina, and High Country Motors. His representation continued into 1985. In May 1984, Mrs. Webster, who by then was physically impaired because of a stroke, consulted with respondent concerning the delinquent payments on the promissory note. Respondent informed Mrs. Webster of his representation of Schoenfeld and Blazina on other matters. Notwithstanding this dual representation, respondent entered into negotiations between Webster, Schoenfeld, and Blazina. As a result of the negotiations, the respondent prepared a second agreement between the parties which was signed in July 1985.

The second agreement incorporated the terms of the first agreement, but deleted the provision for a deed of trust on the buyers' real property. It also set out High Country Motors' agreement to forego a bankruptcy action, and provided for a $10,000 cash payment to Mrs. Webster in consideration of her agreeing to reduce the principal amount of the original promissory note from $110,000 to $20,000.

The second agreement also provided that payment on the promissory note "shall be established by agreement between the parties on or before the 1st day of September, 1984...." However, the new note, also prepared by the respondent, stated that the "parties agree, on or about July 1, 1985, to establish payment schedule ... said payments to commence on or about the 1st of September 1985...."

Webster understood that her payments would begin September 1, 1984. Respondent admits that he acceded to the demands of Schoenfeld and Blazina and changed the date for the commencement of the note payments from 1984 to 1985, without consulting or advising Webster.

Although Webster knew of respondent's joint representation, she was not advised of the risks and ramifications of multiple representation or the advisability of consulting another attorney.

In June 1985, Webster, having received no payments on the second promissory note, retained new counsel. She advised respondent of this fact and requested him to forward her file to her new attorney. Respondent sent Webster a letter agreeing to do so and reminded her that she had an outstanding bill for legal services. Webster's new attorney also requested the file. Respondent contends that he replied to this

request by letter in September 1985, and agreed to make the file available, but it was not until June 1986 that Webster's daughter picked up the files from respondent's office.

Subsequently, Webster's new attorney filed suit against respondent, Schoenfeld, Blazina, and High Country Motors. A settlement was reached in May 1987, and Webster recovered $20,000 plus interest, costs, and attorney's fees from Schoenfeld and Blazina, and $7,000 from respondent.

## C.

In June 1985, the respondent filed a petition for dissolution of marriage on behalf of Thomas Williams. At a hearing for temporary orders on August 9, 1985, at which Marlene Williams appeared *pro se*, a stipulation was entered into and respondent was ordered by the court to prepare the temporary orders. Marlene Williams set the case for a final orders hearing. On being advised by the court clerk of the setting, respondent told the clerk that there were unresolved issues in the case. Accordingly, the clerk vacated the hearing and so advised Marlene Williams.

In May 1986, the court sent respondent a notice of its intended dismissal of the matter due to lack of progress. Mrs. Williams did not receive notice. In June 1986, the case was dismissed for failure to prosecute.

Mrs. Williams filed a request for investigation with the Grievance Committee and sent a copy to the court. As a result, an order was entered directing the respondent to prepare within one week the temporary orders, set aside the dismissal, and set the case for a status conference on November 24, 1986, with instructions that respondent and the parties be present. Thomas and Marlene Williams appeared, but the respondent did not. The court then set a show cause hearing for December 4, 1986, directing respondent to appear and show cause why he failed to prepare the temporary orders. Respondent filed the temporary orders on December 3, 1986. At the December 4 hearing, the parties and the respondent appeared. The court granted the dissolution, entered permanent orders, and

required the respondent to prepare the decree of dissolution. The respondent did so on December 18, 1986.

## D.

The respondent stipulated that his conduct in the Huneycutt and Bloom matter violated C.R.C.P. 241.6 of the Colorado Supreme Court Rules concerning discipline of attorneys and also violated the Colorado Code of Professional Responsibility, DR1-102(A)(1) (violation of a disciplinary rule); DR1-102(A)(5) (conduct prejudicial to the administration of justice); DR6-101(A)(3) (neglect of a legal matter); and DR7-101(A)(3) (prejudice or damage to a client).

With reference to his representation of Webster, the respondent admits that his conduct violated C.R.C.P. 241.6, DR1-102(A)(1); DR5-101(A) (lawyer shall not accept employment if his professional judgment may be affected by his own interests); DR5-105(B) (lawyer shall not continue multiple employment if exercise of judgment adversely affected); and DR9-102(B)(4) (lawyer shall promptly deliver client's property on request).

In connection with the Williams case, the respondent admits that he violated C.R.C.P. 241.6; DR1-102(A)(1); DR1-102(A)(5); and DR7-106(A) (lawyer shall not disregard court order).

## II.

The hearing board, after receiving the stipulation of facts and faced with three instances of admitted misconduct, focused on the appropriate form of discipline to be recommended.

The respondent testified concerning his difficulties in the practice of law, his inability to deal with conflict, his abuse of alcohol, and the chronic depression which interfered with his ability to practice law. He also advised the hearing board that he had been named in a petition, issued by this court, requiring his transfer to disability inactive status and that he would admit the

allegations of the petition.[1]

The respondent also informed the hearing board that he intended to withdraw from the practice of law and seek other employment. He also submitted a psychiatric report which described in some detail his personal and family situation, his limited ability to deal with the stress of a law practice, and recommendations concerning treatment. The report recommended that the respondent "disengage from the private practice of law" and seek other employment.

The hearing board considered a number of aggravating and mitigating circumstances before arriving at its recommendation for discipline. As to the former, it noted that the respondent had received a letter of admonition in 1978 for his neglect of a legal matter, and in 1984, he was disciplined by a private censure for a pattern of neglect in a dissolution of marriage case. In addition, the board found that respondent's misconduct was aggravated by the number of offenses involved and the vulnerability of his client, Webster.

In mitigation, the board considered the respondent's personal and emotional problems, his free and full disclosure, his cooperative attitude, and his efforts to obtain treatment for his psychological problems.

After considering all of the aggravating and mitigating circumstances, the hearing board found that all of the factual predicates for suspension under standards 4.42, 4.32, and 6.22 of the *ABA Standards for Imposing Lawyer Sanctions* were present. It also found that the factual predicate for reprimand under standard 4.63 was present.[2]

The findings of fact and recommendations of the hearing board were unanimously adopted by a hearing panel of the Grievance Committee and forwarded to this court. After initial review, we remanded the matter to the Grievance Committee for a report concerning the respondent's disability status.

On remand, the hearing board requested counsel for the parties to assist it in formulating a written status report. Based on those submissions and a further review of the record, the hearing board made supplemental findings of fact and reaffirmed its recommendation of suspension for one year and one day.

The supplemental findings reviewed the course of the disciplinary proceedings. The hearing board found that although the disciplinary hearing was held on June 9, 1987, and the respondent was transferred to disability inactive status on June 11, 1987, pursuant to C.R.C.P. 241.19, neither the respondent nor the disciplinary counsel suggested that the respondent was so disabled as to be unable to assist in his defense. As stated by the hearing board, "the respondent, his lawyer, and his doctor believed that he was quite capable of proceeding, and the respondent acknowledged his capability on the record. We have no reason to find otherwise."

The hearing board concluded that although the respondent was suffering from personal and emotional problems during the time he engaged in admitted misconduct, he was not so disabled as to be unable to assist in his defense, and his illness would be viewed as a mitigating factor to be considered in recommending appropriate discipline.

The board rejected a suggestion by respondent's counsel that appropriate discipline would be a non-public period of sus-

1. The disciplinary hearing was held on June 9, 1985. The respondent was transferred to disability inactive status on June 11, 1985.

2. Standard 4.42 calls for suspension of a lawyer who knowingly fails to perform services or engages in a pattern of neglect, causing injury or potential injury to a client.

    Standard 4.32 calls for suspension when a lawyer knows of a conflict of interest and does not fully disclose the possible effect of that conflict, and causes injury or potential injury to a client.

    Standard 6.22 calls for suspension when a lawyer knows he is violating a court order or rule and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

    Standard 4.63 calls for a reprimand when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

pension running concurrently with respondent's indefinite transfer to disability inactive status. It reaffirmed its initial recommendation of suspension which a hearing panel subsequently approved.

There is no doubt that the respondent violated the Code of Professional Responsibility. We are also confident that respondent's psychological problems did not interfere or prevent him from assisting in his own defense. We accept the recommendation of the Grievance Committee because the respondent, over a period of three years, engaged in a pattern of neglect and caused injury to his clients. Further, by his failure to recognize an obvious conflict of interest, he caused injury to a particularly vulnerable client.

Accordingly, we order the suspension of the respondent from the practice of law for a period of one year and one day following the date of this order. The respondent is also ordered to pay costs of $462.04 in this matter. Such costs shall be payable within sixty days of this order to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500, Denver, Colorado 80202.