**The PEOPLE of the State of Colorado, Complainant,**

v.

**Peter Joseph ASHLEY, Attorney–Respondent.**

**Nos. 90SA64, 90SA143.**

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

Linda Donnelly, Disciplinary Counsel, Denver, for complainant.

Peter Joseph Ashley, pro se.

PER CURIAM

For purposes of this opinion we have consolidated two attorney discipline cases involving the respondent, Peter Joseph Ashley. In Case No. 90SA64, a hearing board of the Supreme Court Grievance Committee (Committee) recommended that the respondent be disciplined by public cen-

sure and directed to refund $100 to the complaining witness. A hearing panel, by a divided vote, concurred in the recommendation.[1]

In Case No. 90SA143, a hearing board recommended that the respondent be suspended from the practice of law for one year and one day and ordered to make restitution to two clients. A hearing panel concurred in the recommendation.[2] Because we believe that the conduct of the respondent warrants more severe discipline, we do not accept the recommendations of public censure and suspension for one year and one day, but, instead, suspend the respondent from the practice of law for three years. The other recommendations are accepted.

I

The respondent was admitted to practice law in Colorado in 1983, and is subject to the disciplinary jurisdiction of this court and its Grievance Committee.

In Case No. 90SA64, a complaint was filed charging the respondent with violating C.R.C.P. 241.6 and various sections of the Code of Professional Responsibility. The respondent failed to file an answer and a default order was entered.

The facts as stated in the complaint and found by the board are as follows. In July 1988, Dan Oxley, the complaining witness, retained the respondent on a contingent fee basis to file a civil lawsuit against Randy Doucette and gave respondent $100. Subsequently, Oxley made numerous attempts to contact the respondent to determine the status of his case, but to no avail. In November 1988, Oxley sought to obtain his file from the respondent without success. Finally, in December 1988, Oxley went to respondent's office and obtained the file which contained a letter, dated December 20, 1988, from the respondent to Oxley stating that $81.44 had been spent for the court filing fee, and that the respondent was waiting for a statement from the Rio

---

1. Two members of the hearing panel favored a short suspension.

2. One member of the hearing panel favored a longer suspension.

Grande County Sheriff's Office for cost of service.

Further investigation revealed that the sheriff's office had never received a summons or complaint from the respondent for service on Doucette.

On December 21, 1988, the respondent filed the case on behalf of Oxley in the Pueblo County District Court. At that time, Oxley had terminated respondent's employment and the respondent had no authority to file any legal action on his behalf.

In explanation of his conduct, the respondent testified that he did not have a secretary, that he shared office space, and that he did his own typing. In addition, when returning telephone calls, it was usually in the evening in response to messages left on his answering machine.

The board concluded that the respondent lied, thus violating DR 1–102(A)(4), when he represented to his client that he had spent $81.44 for a court filing fee and was awaiting a statement from the Rio Grande County Sheriff's Office; neglected a legal matter entrusted to him, DR 6–101(A)(3); intentionally failed to carry out a contract of employment, DR 7–101(A)(2); and failed to promptly return his client's property, DR 9–102(B)(4).

In arriving at its recommendation of public censure, the board considered the American Bar Association, *Standards for Imposing Lawyer Sanctions* (1986). In particular, the board relied on the fact that respondent had no record of prior discipline, Standard 9:32(a); absence of a dishonest or selfish motive, Standard 9:32; and remorse, Standard 9.32(1). Although the board recognized factors in aggravation, it concluded that public censure was more appropriate than a period of suspension. Finally, it recommended that the respondent be ordered to refund to Oxley the sum of $100 plus statutory interest from July 27, 1988.

## II

In Case No. 90SA143, a three-count complaint was filed charging the respondent with multiple violations of C.R.C.P. 241.6 and the Code of Professional Responsibility. Again, the respondent failed to file an answer and a default order was entered. Although, as a result of the default, the allegations of this complaint were deemed admitted, the respondent was permitted to offer testimony and argument on his own behalf.

The facts as stated in the complaint and found by the board are as follows. The complaining witness in Count I, Tommie Martinelli, was referred to respondent in November 1984. He agreed to assist her in obtaining a divorce on a *pro bono* basis. Respondent asked for and received $81 for filing fees.

In April 1986, Martinelli was served with her husband's dissolution petition. Respondent assured her that it was a mistake because he had already filed her petition the previous May. Respondent filed an answer to the husband's petition on September 18, 1986, admitting the allegation of a valid separation agreement and not contesting the maintenance provision.

On October 20, 1986, a final orders hearing was set. The court ordered a continuation of support payments pursuant to the separation agreement pending the hearing on maintenance to be held November 18, 1986. Neither respondent nor Martinelli appeared for this hearing, however, because respondent misrepresented to Martinelli that the hearing had been postponed and that he would be out of town. In fact, respondent sent another attorney to cover for him. The court indicated that any additional pleadings would have to be filed by December 3, 1986, or the court would decide maintenance and other issues on the evidence it had heard from the petitioner-husband on November 18, 1986, and on the face of the agreement. No additional pleadings were ever filed by respondent, despite his representation to his client that he had met the deadline.

As a result of respondent's failure to file any appropriate pleadings, Martinelli was not permitted to testify at the February 6, 1987 hearing. The court admonished her for not having complied with its order, up-

held the separation agreement, and terminated maintenance as of November 18, 1986.

In a separate matter, Martinelli requested that the respondent pursue her Supplementary Security Income (SSI) claim. The respondent picked up her papers in May 1985, and assured her that he would handle it. Respondent did not file a timely appeal and Martinelli was denied SSI benefits for 1985.

For the purpose of analyzing Martinelli's disability claim, the respondent allowed a friend of his, a medical technician employed at Fort Carson, to look at Martinelli's medical and legal files without her consent.

Finally, in a third matter, Martinelli asked respondent to assist her in getting her share of her ex-husband's 1984 tax refund. The completed but unsigned return was mailed to Martinelli by her ex-husband from Germany. Respondent had Martinelli sign the return which showed a refund of approximately $1,200 of which Martinelli was due one-fourth under the separation agreement. Martinelli's ex-husband never received the signed return from the respondent. He then filed a single, head-of-household tax return and never sent Martinelli any portion of the refund.

In late 1985, respondent gave Martinelli a check for $164.05 and misrepresented that it was her share of the refund. Respondent apparently never determined that the original tax return was filed and made a token payment gratuitously to his client knowing she was in desperate financial condition. Respondent also failed to retain any documentation of his client's funds and property.

The complaining witness in Count II, Douglas Briggman, was previously represented by John Stinar in a suit filed against Ford Motor Company and Phil Long Ford for a defective van. Stinar wished to withdraw and spoke to respondent who indicated to him that he would take Briggman's case on a contingency fee basis. Stinar forwarded his files to the respondent and communicated to him the recent settlement offer from Ford of $5,000. Trial was set for the last week of August

and a hearing on the designation of expert witnesses was set for August 12, 1988.

On July 7, 1988, Briggman's wife met with respondent who advised her not to accept the offer. Although respondent promised to call on July 10, 1988, after reviewing the file, he failed to do so.

After several unsuccessful attempts by the Briggmans to reach respondent, on August 1, 1988, an agreement on fees was reached and respondent assured the Briggmans he would be ready for trial at the end of the month.

Respondent did not contact Briggman's expert witness as promised. Since Briggman could not reach the respondent after August 1, he was forced to return to Stinar for help. On August 8, 1988, Stinar took the case back five days before the hearing. Respondent had never filed an entry of appearance in the case.

Respondent failed to properly communicate with Briggman, Stinar, and the attorney for Ford Motor Company. He also failed to obtain and designate an expert witness, failed to seek a continuance, and failed to prepare for the hearing set for August 12, 1988. Respondent essentially abandoned the case.

The complaining witness in Count III, Harold Lazarro, paid respondent a $150 retainer on April 15, 1987, to file suit against Pioneer Bank in Fountain, Colorado for improperly loaning money to his ex-business partner who had used business equipment owned by both as collateral.

Respondent, on several occasions, told Lazarro that the case was set for hearing and/or trial. On at least two occasions, Lazarro accompanied respondent to court only to be told by respondent that the case had been postponed when, in fact, respondent had never filed the suit.

In July 1987, respondent was retained to handle Lazarro's divorce but never concluded it. Opposing counsel attempted to obtain discovery from respondent on several occasions, verbally and in writing, between August 10, 1987 and March 2, 1988, when a second motion to compel was filed. Finally, in May 1988, the Lazarros decided to

drop the divorce proceedings and so informed their attorneys.

The board concluded that the respondent failed to seek the lawful objectives of his clients and failed to carry out his employment contracts in violation of DR 7–101(A)(1), (2) and DR 6–101(A)(3). He also handled a legal matter without adequate preparation in violation of DR 6–101(A)(2); he was dishonest with his clients as to the status of their cases, DR 1–102(A)(4); his acts were prejudicial to the administration of justice, DR 1–102(A)(5); he failed to retain documentation of his clients' funds, DR 9–102(B)(3); and he engaged in conduct that adversely reflects on his fitness to practice law, DR 1–102(A)(6).

The board considered the American Bar Association, *Standards for Imposing Lawyer Sanctions* (1986), in arriving at its recommendation. With reference to Standard 9.0, *Aggravation and Mitigation*, it found the following aggravating factors: (1) a pattern of misconduct; (2) multiple offenses; (3) bad faith obstruction of the disciplinary proceeding; and (4) refusal to acknowledge wrongful nature of conduct.

In determining the appropriate sanction the board found Standards 4.42 and 4.62 to be applicable.[3] It recommended that the respondent be suspended from the practice of law for a period of one year and one day; that he be ordered to refund $81 to Martinelli with statutory interest from May 1985; that he make restitution to her in the amount of $135.95, with statutory interest from December 1985; that he refund $150 to Lazarro with statutory interest from April 15, 1987; and that he pay the costs of the disciplinary proceedings.

### III

In determining the appropriate discipline to be imposed, we must consider not only the facts and background of the individual lawyer, but also the effect of the lawyer's conduct on the administration of justice, the profession, and the clients whom the lawyer serves. *See* Standard 1.1, ABA, *Standards for Imposing Lawyer Sanctions* (1986).

Here, in two separate proceedings, the respondent has been found to have neglected his clients' affairs, lied to them, and exhibited a callous indifference to their needs. He has disregarded his responsibilities to the profession and to the administration of justice. We are not persuaded that the recommendations of public censure and suspension for one year and one day adequately reflect the seriousness of respondent's transgressions.

We believe that a suspension from the practice of law for three years is warranted and now order such suspension, effective on the date of issuance of this opinion.[4] The respondent is further ordered to pay the refunds and make restitution as recommended by the hearing boards, whose recommendations we accept. The respondent is ordered to pay the costs of the proceeding in Case No. 90SA64 in the amount of $420.87, and the costs of the proceeding in Case No. 90SA143 in the amount of $311.28, by tendering those sums to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202, within ninety days of this date.

---

3. Standard 4.42 states:
    Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
    (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

Standard 4.62 states:
Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

4. On May 20, 1990, in *People v. Ashley*, No. 90SA113, we ordered the immediate suspension of the respondent.