**The PEOPLE of the State of Colorado, Complainant,**

v.

**Dean P. GROSSENBACH, Attorney–Respondent.**

**No. 90SA243.**

Supreme Court of Colorado, En Banc.

Jan. 14, 1991.

Linda Donnelly, Disciplinary Counsel, Denver, for complainant.

Dean P. Grossenbach, pro se.

PER CURIAM.

In this disciplinary proceeding a complaint was filed in June of 1989 with the Supreme Court Grievance Committee (the Committee) against respondent, Dean B. Grossenbach, alleging professional misconduct during 1987 and 1988 in his representation of Tamara A. Netherton. At the conclusion of a hearing at which respondent and others testified, a hearing board of the Committee entered findings of fact and a recommendation that respondent be suspended from the practice of law for a period of one year and one day. The hearing panel unanimously adopted those findings and recommendation. We agree that suspension for a period of one year and one day is an appropriate sanction in this case.

I

Respondent was admitted to the bar of this court on September 29, 1978, and is registered as an attorney upon the official records of this court. The respondent therefore is subject to the jurisdiction of this court and of the Committee. C.R.C.P. 241.1(b). On August 27, 1990, pursuant to a petition filed jointly by respondent and complainant, respondent was transferred to disability inactive status. C.R.C.P. 241.-19(a). The record does not reflect that respondent is unable to assist in the de-

fense of this disciplinary proceeding. *See id.*

## II

On January 28, 1983, Tamara Netherton purchased a condominium in Colorado Springs, Colorado. To finance the transaction, she obtained a loan guaranteed by the Federal Housing Administration (hereinafter "FHA") from Reliance Equities, Inc. (hereinafter "Reliance"). Because the property had already been approved by the Veterans Administration (hereinafter "VA") for loans guaranteed by that agency, the property was deemed approved for FHA loans by virtue of a reciprocal agreement between the two federal agencies. Tamara Netherton's loan agreement with Reliance provided that the rate of interest for the loan would increase to twelve percent per annum after January 26, 1986, and remain at that level for the duration of the term thereof.

In December 1986, Tamara Netherton attempted to refinance her loan. She obtained a commitment from another lending institution to provide financing at an interest rate of eight and one-half percent per annum, which commitment expired by its terms on April 1, 1987. However, she could not obtain verification until April 10, 1987, that her 1983 loan was guaranteed by the FHA because Reliance never sent the FHA a copy of the reciprocal agreement establishing the property's eligibility for such guarantee. Consequently, the new loan commitment expired by its terms and Tamara Netherton's monthly loan payment remained at a level $150 higher than it would have been under the proposed refinancing plan. The resulting economic hardship caused her to convey the property by deed in lieu of foreclosure.

In early May 1987, Tamara Netherton paid respondent a $500 retainer fee to represent her in an action to recover damages against Reliance. Respondent informed her that he would send her copies of all correspondence, would provide periodic billing statements, and would investigate the case to determine whether Reliance or the VA was at fault. In June 1987, respondent informed his client in a telephone conversation that he had discovered Reliance was at fault and that he would proceed on her behalf.

In late July 1987, Tamara Netherton learned from a newspaper article that Reliance had closed its offices. She sent a copy of the article to respondent and asked whether that circumstance would affect her case. Respondent did not reply. On July 30, 1987, Reliance filed a voluntary petition for bankruptcy in the United States District Court for the District of Colorado, pursuant to Chapter 7 of the federal Bankruptcy Code. 11 U.S.C. §§ 701 to 766 (1988).

Tamara Netherton made repeated efforts to contact respondent during August and September of 1987, to no avail. She then asked her sister, Renee Netherton, an attorney residing in Kansas, to assist her. After repeated attempts by Renee Netherton to obtain information from respondent, he finally informed her that it was then undetermined whether Reliance would seek relief under Chapter 7 or Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 to 1146 (1988), but that he would monitor the case. Respondent's statements were not true; Reliance had already filed a petition in bankruptcy seeking relief under Chapter 7 of the Bankruptcy Code.

On August 14, 1987, a notice to creditors was mailed in the bankruptcy proceeding. The notice indicated that some assets of Reliance would be available to satisfy claims of unsecured creditors and contained a statement that all claims were to be filed by December 9, 1987. At the time of the hearing in this case, the trustee in bankruptcy anticipated that unsecured creditors would receive twenty to forty percent of the amount of their claims.

In January 1988, respondent informed Renee Netherton in a telephone conversation that Reliance was involved in a bankruptcy proceeding; that a claim had been filed in that proceeding on behalf of her sister, Tamara; that he had learned from the trustee in bankrtupcy that a reorganization plan had been filed but rejected; and that Reliance had been granted three to

five months within which to submit a new plan. In fact, respondent had not filed a claim on behalf of his client in the bankruptcy proceeding, and Reliance had not filed any reorganization plan.

Tamara and Renee Netherton continued their efforts to obtain information from Respondent. Respondent failed to reply to messages left with his telephone answering service or to written communications, and did not communicate with his client in any manner. On October 24, 1988, Tamara Netherton informed respondent that she intended to initiate a grievance proceeding against him. After the commencement of these proceedings, respondent refunded the $500 retainer fee he had received from his client.

### III

Respondent unquestionably failed to pursue a legal matter entrusted to him, in violation of DR6–101(A)(3) (neglecting a legal matter). Respondent's misconduct also violated C.R.C.P. 241.6 and DR1–102(A)(1) (violation of a disciplinary rule). The Committee concluded that respondent's false and misleading statements to his client and her sister constituted additional acts of neglect and that his failure to file a claim on behalf of his client in Reliance's bankruptcy proceeding constituted knowing conduct resulting in injury to her.

In seeking to explain his admitted failure to communicate with his client, respondent testified that during all relevant time periods he was experiencing physical illness, alcohol-related problems, family-related problems and financial difficulties that resulted in stress and depression; that his telephone answering service was unsatisfactory; and that his secretary failed to forward messages to him. He also testified that he had determined that because any claim Tamara Netherton might have had against Reliance would at best be for a modest amount, it would have been inefficient for her to pursue an action against Reliance. He admitted, however, that he failed to communicate this or any other opinion about the merits of the case to his client. The hearing board concluded that the evidence introduced by respondent did not establish his claims of stress and depression. .

The record in this proceeding also reveals that respondent has previously been disciplined for professional misconduct. In October 1986, he received a private censure from this court as the result of professional misconduct involving neglect and misleading communications to a client. Respondent also received a letter of admonition from the Committee in December 1987 for failure to timely and accurately account for client funds.

We conclude that respondent's repeated misrepresentations of fact to his client and her sister, his consistent refusal to inform his client of critical developments affecting her legal rights, and his knowing failure to file a claim in the Reliance bankruptcy proceeding to protect his client's interests constitute grave professional misconduct. Section 4.42(a) of the ABA *Standards for Imposing Lawyer Sanctions* (1986) provides that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and the client is consequently injured. That sanction is especially appropriate here in light of the fact that respondent has received disciplinary sanctions on two prior occasions. ABA *Standards* § 9.22(a); *see People v. Belina,* 765 P.2d 121 (Colo.1988).

Other aggravating factors present in this case include the fact that the record reveals a pattern of misconduct, ABA *Standards* § 9.22(c); respondent's substantial experience in the practice of law, ABA *Standards* § 9.22(i); and the vulnerability of respondent's client, who relied upon respondent's commitment to communicate directly with her by telephone and through correspondence to preserve her rights, ABA *Standards* § 9.22(h). As the Committee noted, personal and emotional problems may in some circumstances constitute mitigating factors. ABA *Standards* § 9.32(c). However, we find the Committee's recommendation that respondent be suspended from the practice of law because of his professional misconduct fully justified in the circumstances of this case.

Accordingly, respondent is hereby suspended from the practice of law for a period of one year and one day. Because respondent is currently on disability inactive status, this judgment shall be effective on the date of this decision. C.R.C.P. 241.-21(a). Respondent is further ordered to pay the costs of these proceedings, in the amount of $1,296.11, such sum to be paid to the Supreme Court Grievance Committee, 600—17th Street, No. 500–2, Dominion Plaza Building, Denver, Colorado 80203, within sixty days from the date of this opinion.