**The PEOPLE of the State of Colorado, Complainant,**

v.

**Richard Arnold ANDERSON, Attorney–Respondent.**

**Nos. 90SA455, 91SA278.**

Supreme Court of Colorado, En Banc.

April 6, 1992.

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick, Jay P.K. Kenney, James C. Coyle, Asst. Disciplinary Counsels, Denver, for complainant.

E. Ronald Beeks, Evergreen, for respondent.

PER CURIAM.

These two attorney discipline proceedings have been consolidated for briefing purposes and for the issuance of a single opinion and order. In No. 90SA455, a hearing panel of the Supreme Court Grievance Committee approved the recommendation of the hearing board that the respondent be suspended for two years from the practice of law, refund unearned attorney's fees, be required to undergo mental and physical examinations prior to reinstatement, and be assessed the costs of the proceeding. The panel in No. 91SA278 approved the recommendation of the hearing board that the respondent be suspended for one year and be assessed costs. The assistant disciplinary counsel has excepted to the recommendation of a one-year suspension in No. 91SA278 as unduly lenient and requests that the respondent be disbarred. Given the seriousness of the respondent's misconduct, we accept the recommendations of the hearing panels, and order that the respondent be suspended for three years.

## I

The respondent was admitted to the bar of this court on September 20, 1960, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.-1(b). After listening to the testimony of the complainant's witnesses and witnesses for the respondent, including the respondent's own testimony, and considering the exhibits introduced by both sides, the hearing board in each proceeding found that the following facts were established by clear and convincing evidence.

### No. 90SA455

### *The Lewis Matter*

■ On March 18, 1986, Lisa Lewis retained the respondent to represent her in connection with a skiing accident she was involved in on March 15, 1986. The respondent filed a verified complaint in Clear Creek County District Court on January 21, 1987, against the Clear Creek Skiing Corporation d/b/a Loveland Ski Basin Area on behalf of Lewis. The complaint requested damages for injuries Lewis sustained after she dismounted from the defendant's chairlift. The complaint alleged that Lewis's injuries were caused by the defendant's negligence and stated:

> 6. As a proximate result of Defendant's negligent act, Lewis suffered permanent facial disfigurement that required her to cease her employment as a dancer, thus resulting in lost wages.

In fact, Lewis had not been employed as a dancer since August 27, 1977, and had no intention of returning to dancing. Lewis testified that the respondent knew the statement relating to dancing was false but advised her to sign the verified complaint because it enhanced the value of her claim. The hearing board found that, in his handling of the Lewis case, the respondent failed to contact key witnesses to the accident, failed to conduct discovery or investigate the witnesses to the accident and the witnesses listed by the defendant, failed to prepare Lewis and two friendly witnesses prior to their depositions,[1] failed to personally attend Lewis's own deposition, and failed to engage or consult with expert witnesses concerning liability. When Lewis obtained substitute counsel in May 1988, her case was not adequately prepared for trial which was scheduled for June 21, 1988. These determinations of the hearing board are fully supported by the evidence in the record.[2]

The board concluded, and we agree, that inclusion of the false claim for loss of employment damages violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 7–102(A)(2) (in representing a client, a lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law). In almost totally failing to prepare the case for trial over a two-year period, the respondent violated DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances), DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer), and DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means).

### *The Risberg Matter*

In July 1987, Martha and Kenneth Risberg retained the respondent to represent them in obtaining visitation rights with their grandchild. They paid the respondent $300. Their son, Wayne Risberg, was the child's father. Wayne Risberg and his former wife, Denise Martinez, were then involved in a dispute over visitation and support of the child arising from the dissolution of their marriage. Martinez had filed

---

1. The respondent suggests that "preparation" of deponents is essentially a euphemism for subornation of perjury. We reject this comparison and find his argument disingenuous given his knowing and intentional inclusion of false statements in the verified complaint.

2. The respondent asserts that the hearing board improperly limited his counsel's cross-examination of Lewis. We have examined the transcript of the hearing and find that this contention is without merit.

a motion to take the child out of Colorado and to restrict Wayne Risberg's visitation rights.

The respondent filed a motion to intervene in the dissolution proceeding on behalf of the Risbergs on September 9, 1987. On that date, the applicable statute concerning grandparent visitation rights was section 19–1–116, 8B C.R.S. (1986), which provided in part:

> **19–1–116. Visitation rights of grandparents.** (1) Any grandparent of a child may, in the manner set forth in this section, seek a court order granting him reasonable grandchild visitation rights when there is or has been a child custody case....
>
> ....
>
> (2) A party seeking a grandchild visitation order shall submit, together with his motion for visitation, to the district court for the district in which the child resides an affidavit setting forth facts supporting the requested order and shall give notice, together with a copy of his affidavit, to the party who has legal custody of the child. The party with legal custody may file opposing affidavits.... A hearing shall be held if either party so requests or if it appears to the court that it is in the best interests of the child that a hearing be held. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. If, at the conclusion of the hearing, the court finds it is in the best interests of the child to grant grandchild visitation rights to the petitioning grandparent, the court shall enter an order granting such rights.

§ 19–1–116, 8B C.R.S. (1986). A hearing on Martinez's motion to take the child out of state was scheduled for September 9, 1987, the same day that the respondent filed the motion to intervene. The respondent arrived late at that hearing, however, because of a scheduling conflict. The hearing board found that the respondent had failed to make adequate arrangements for another attorney to cover the hearing. The hearing was not held because the respondent was late and was rescheduled for October 28, 1987. The court advised the re-

spondent that the grandparent visitation statute required the filing of an affidavit and that he must file one to proceed. The respondent did not argue that no affidavit was required or that the verified motion constituted an affidavit under the statute.

In 1987 the general assembly repealed the Children's Code and reenacted the Code with amendments. Former section 19–1–116 was recodified at section 19–1–117, 8B C.R.S. (1990 Supp.). Ch. 138, sec. 1, § 19–1–117, 1987 Colo.Sess.Laws 709–10. The effective date of section 19–1–117 was October 1, 1987. Ch. 138, sec. 48, 1987 Colo. Sess.Laws 823. The pertinent provisions of section 19–1–117(2) are, however, identical to those of former section 19–1–116(2).

On October 28, 1987, the respondent had not filed the affidavit. At the hearing, the court took no action on the motion to intervene, but an order was entered allowing Martinez to remove the child from the state based on Wayne Risberg's consent. The respondent was again instructed to file the affidavit as soon as possible, and the respondent told the court, "I'll file the affidavit this afternoon." A further hearing on the issue of grandparent visitation was held on December 1, 1987, but because the respondent had still not filed the affidavit, the motion to intervene was denied. The court also assessed the respondent $375 in attorney's fees to be paid to counsel for Martinez because the respondent required that attorney to appear at two hearings without substantial justification.

The respondent maintained for the first time before the hearing board that his motion to intervene was sufficient under C.R.C.P. 24 and that since Rule 24 does not explicitly require an affidavit, none was necessary. The respondent's contention is doubly wrong. First, the respondent's motion to intervene was defective even under C.R.C.P. 24. Rule 24 requires that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and *shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.*" C.R.C.P. 24(c) (emphasis added).

As we said in *Capitol Industrial Bank v. Strain,* 166 Colo. 55, 58, 442 P.2d 187, 188 (1968):

> A motion is not a pleading. This is so although the two have similar formal parts and even though certain defenses may be raised by motion. The filing of a motion to intervene, alone, is not sufficient. The positive requirement of the Colorado Rules of Civil Procedure is that a pleading must also be filed. Parties litigant have a right to rely upon the rules as written. It is the duty of trial courts, as well as our duty, to enforce them when timely objection is made by a party to litigation.

Second, a grandparent's right of visitation is statutorily derived. *In re Marriage of Aragon,* 764 P.2d 419, 421 (Colo.App.1988). Section 19–1–117, 8B C.R.S. (1991 Supp.), requires that an application for grandparent visitation comply with the criteria contained in subsection (2) whether the grandparents seek to institute a new proceeding or to intervene in a pending proceeding. The respondent's application therefore had to include an affidavit in conformity with the statute.

The respondent also asserted for the first time before the board that the affidavit requirement was satisfied because the motion to intervene was verified. "An affidavit is a signed, written statement, made under oath before an authorized officer, in which the affiant vouches that what is said is true." *Otani v. District Court,* 662 P.2d 1088, 1090 (Colo.1983). A verified pleading or other verified legal document may under some circumstances be held to be an affidavit if the document otherwise meets the legal requirements of an affidavit. *See* 2A C.J.S. *Affidavits* § 5 (1972).

"The chief test of the sufficiency of an affidavit required by law is whether it is so clear and certain that an indictment for perjury may be sustained on it if false."

*Jotter v. Marvin,* 67 Colo. 548, 551, 189 P. 19, 21 (1920). The trial court could properly conclude, however, that the conclusory statements contained in the respondent's motion to intervene did not meet the legal requirements of "an affidavit setting forth facts supporting the requested order." § 19–1–117(2).

The point to be made is that the district court ruled that an affidavit was required under the grandparent visitation statute and implicitly found that the verified motion to intervene was insufficient. The respondent never contested that ruling in the district court and did not seek direct review of the ruling. He cannot now collaterally attack that ruling in this disciplinary proceeding. The respondent's derelictions denied the Risbergs any meaningful opportunity to obtain visitation rights to their grandchild in Colorado. We conclude, as did the hearing board, that the respondent's conduct violated DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer), DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means), DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client), and DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship).

### The Cantrell Matter

Lorin Cantrell hired the respondent to represent him in a dissolution of marriage proceeding. A contempt citation had been issued against Cantrell and a hearing was scheduled for 11:00 a.m. on August 29, 1987 or 1988.[3] A settlement conference was held in lieu of the contempt hearing.

---

3. The complaint filed by the assistant disciplinary counsel charged that the events forming the basis for this count occurred on August 29, 1988. The respondent's evidence, including a page from his calendar for August 29, 1988, also indicates that the events took place in 1988. The witnesses for the complainant testified that the Cantrell hearing was scheduled for August 29, 1987, and the hearing board so found. The respondent asserts that the discrepancy with respect to the correct year taints the hearing board's findings and a new hearing is necessary. We conclude below that any variance in the date was immaterial.

Present at the conference were Cantrell, the respondent, Mrs. Cantrell and her attorney, and a witness subpoenaed by the respondent. The conference was held in a conference room at the courthouse. Cantrell, the attorney for Mrs. Cantrell, and the subpoenaed witness all testified that the respondent was intoxicated at the time of the conference. The respondent and his secretary testified that he was not intoxicated on the morning of the conference. A copy of the respondent's schedule for that day was introduced into evidence apparently for the purpose of establishing that the respondent had other court appearances and appointments that day, but that no other complaints of intoxication were received.[4]

The hearing board found by clear and convincing evidence that the respondent was intoxicated at the time of the settlement conference. This conclusion is supported by substantial evidence in the record and we decline to overturn it. *See People v. Garnett,* 725 P.2d 1149, 1152 (Colo.1986). The hearing board, when acting as a fact finder, has the duty to assess the credibility of evidence before it, controverted and uncontroverted. *People v. Distel,* 759 P.2d 654, 662 (Colo.1988). "In determining whether the board's findings are supported by substantial evidence, it is not within the province of this court to measure the weight of the evidence or to resolve the credibility of witnesses." *Id.*

We also conclude that any discrepancy in the date of the conference is immaterial. It is apparent that the real issue was whether the respondent was intoxicated at the settlement conference, not the day on which the conference took place. The respondent did not object when the assistant disciplinary counsel introduced testimony at the hearing which tended to show that the conference took place on August 29, 1987, and not August 29, 1988, as alleged in the complaint. The respondent's defense consisted of testimony (and documentary evidence in the form of his calendar) that he was not intoxicated at the settlement

conference and that the conference took place on August 29, 1988. There is no contention that more than one settlement conference took place with the same persons present at the same time of day at the same location. The respondent does not assert that the alleged variance in the date of the conference prejudiced his defense in any way. We therefore conclude that any variance in the date was immaterial and that no further proceedings or findings are necessary.

We determine, as did the board, that the respondent's conduct violated DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), and DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law).

### Failure to Report DWAI

The respondent has not disputed the hearing board's finding that he did not notify the disciplinary counsel that he had been convicted of driving while ability impaired in 1983. Failure to report the conviction violated C.R.C.P. 241.16(b).

### No. 91SA278
### The Nichols Matter

On August 5, 1986, Larry Nichols fell in a hole in the parking lot near his condominium and injured his knee. Nichols and his wife retained the respondent to represent them in a personal injury action against the owners of the condominium. The respondent prepared several drafts of a proposed complaint. The evidence was conflicting on whether the clients ever received a copy of the complaint for their approval. The evidence is clear, however, that the respondent failed to file any complaint over a period of two years and that the Nichols claim is now time-barred.

The respondent represented to the clients that a complaint had been filed and in May 1988 told them that the case was close to being settled. Based on these representa-

---

4. The respondent contends that the hearing board erroneously overlooked the copy of his calendar which was introduced into evidence.

We have examined the exhibit and we conclude that any error in not considering the exhibit was harmless.

tions, the clients signed a purchase agreement for a van with Century Auto Brokers. On April 26, 1988, the respondent wrote to Century Auto Brokers and stated that one of two personal injury cases he was handling for Nichols "should culminate in a settlement within the next two to three weeks. Mr. Nichols has requested that out of his settlement, your company will be protected to the extent of $3,000.00 and I will abide by his request." The respondent testified that the settlement he was referring to in the letter pertained to a previous injury that Nichols had sustained and not the claim against the condominium. The transcript of the hearing indicates that, although the respondent did not settle either of the personal injury claims for Nichols, he did send a check for $2,000 or $3,000 to Century Auto Brokers for payment on Nichols's van. The clients discovered that the respondent had not filed a complaint when an attorney for Century Auto Brokers attempted to verify that settlement monies were forthcoming and learned that no complaint had been filed.

The hearing board concluded, and we agree, that the respondent's conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer), DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means), and DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship).

II

■ The hearing panel in No. 90SA455 approved the recommendation of the hearing board that the respondent be suspended for two years from the practice of law, refund unearned attorney's fees, be required to undergo mental and physical examinations prior to reinstatement, and be assessed the costs of the proceeding. The hearing panel in No. 91SA278 recommended that the respondent be suspended

for one year and assessed costs. The recommendation of the grievance committee concerning discipline is only advisory and this court has the independent responsibility to determine appropriate discipline. *People v. Flores,* 772 P.2d 610, 614 (Colo. 1989). The assistant disciplinary counsel has excepted to the recommendation of a one-year suspension in No. 91SA278 as unduly lenient and requests that the respondent be disbarred.

We find that a number of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*) apply to this case. The two most pertinent standards, however, are 4.42 and 4.62. In the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *ABA Standards* 4.42. Suspension is also appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to the client, *ABA Standards* 4.62.

In No. 90SA455, the board found the presence of the following factors in aggravation: (1) prior disciplinary offenses (the most serious and recent being a six-month suspension, *see People v. Anderson,* 200 Colo. 76, 612 P.2d 94 (1980)), *ABA Standards* 9.22(a); (2) a pattern of misconduct, *id.* at 9.22(c); (3) multiple offenses, *id.* at 9.22(d); (4) submission of false evidence, false statements, or other deceptive practices during the disciplinary process, *id.* at 9.22(f); (5) refusal to acknowledge the wrongful nature of conduct, *id.* at 9.22(g); (6) vulnerability of the victim, *id.* at 9.22(h); (7) substantial experience in the practice of law, *id.* at 9.22(i); and (8) indifference to making restitution, *id.* at 9.22(j). The board found only one mitigating factor— the remoteness of prior offenses, *id.* at 9.32(m).

The hearing board in No. 91SA278 did not make explicit findings with respect to aggravating and mitigating factors. We note, however, that evidence was intro-

duced that the respondent had personally made a $2,000 to $3,000 payment on Nichols' van, presumably a gesture of restitution. *See id.* at 9.32(d).

The assistant disciplinary counsel contends that disbarment is appropriate, citing *People v. Ashley,* 817 P.2d 965 (Colo.1991); *People v. Grossenbach,* 814 P.2d 810 (Colo. 1991); and *People v. Bergmann,* 807 P.2d 568 (Colo.1991). We find these cases distinguishable. The respondent who was disbarred in *Grossenbach,* 814 P.2d 810, converted client property and had just been previously suspended for a year and a day in *People v. Grossenbach,* 803 P.2d 961 (Colo.1991). The respondents in *Ashley,* 817 P.2d 965, and *Bergmann,* 807 P.2d 568, had recently received three-year suspensions before subsequent misconduct resulted in their disbarment. *See People v. Ashley,* 796 P.2d 962 (Colo.1990); *People v. Bergmann,* 790 P.2d 840, 843 (Colo.1990).

The respondent's most recent discipline occurred when he was suspended in 1980 for six months. Although the question is a close one, we conclude that the maximum period of suspension permitted under our rules, rather than disbarment, is appropriate. Accordingly, we accept the recommendations of the hearing panels and order the respondent to be suspended for three years.

### III

It is hereby ordered that Richard Arnold Anderson be suspended from the practice of law for three years, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). If the respondent petitions for reinstatement, he shall comply with all of the conditions in C.R.C.P. 241.22(b)-(d). It is further ordered that, prior to an application for reinstatement, Anderson refund $300 to the Risbergs plus statutory interest from December 1, 1987. It is further ordered that, prior to reinstatement, the respondent undergo complete mental and physical examinations in order to demonstrate his ability and fitness to practice law. It is further ordered that Anderson pay the combined costs of these proceedings in the amount of $2,672.30 within 90

days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80203.